John F. Belvin instituted this suit for the purpose of obtaining a judgment of $1,160.50 against the Mansfield Hardwood Lumber Company of Louisiana, Inc., such amount being allegedly due him under a contract providing for the purchasing and logging of certain timber.
The demands of plaintiff were rejected by the trial court and he appealed.
Since the lodging of the transcript in this court, appellant has departed this life; and through an appropriate order, his duly recognized heirs at law, Gladys Belvin Carr, Katie Belvin Campbell and Johnnie Belvin Nesbit, have been authorized to prosecute this appeal and stand in judgment in his stead.
Decedent, to whom reference will hereinafter be made as plaintiff, followed, during a period of more than 30 years, the business of cruising and logging timber. After he had cruised and estimated a certain tract of timber belonging to W.R. Guess and located in Jackson Parish, Louisiana, and had obtained a so-called option thereon, he commenced negotiations for selling it to defendant. As a result of these, defendant, through its vice-president, Tracy L. Harrel, addressed and delivered to plaintiff a letter dated March 10, 1937, in which the following was proposed:
"Our Mr. Warren Curry is now cruising timber owned by Mr. W.R. Guess located in Sections 24, 25, 26, 36, Twp. 16 N., R. 3 West, and Section 30 16 2 West, Jackson Parish. We agree to let you known definitely by the night of March 11th., whether we will be interested in purchasing same. If we do purchase this tract of timber, we understand the price will be $5000.00 cash to the owner. In addition to this, we agree to pay you $500.00 cash. The $5000.00 to be placed in escrow at Jonesboro State Bank, with deed attached, until title is approved. The $500.00 commission to be paid to you when title is approved, and deed accepted.
"We further agree to contract the logging of this timber to you at the price of $5.50 for all hardwood timber, and $5.00 per M' for all pine timber, loaded on Rock Island gondola cars at Quitman, La. We agree to give you 10 days notice in the event we wish to discontinue logging this tract of timber. The cutting of this timber to be under our supervision, and the carrying out of the agreement to be subject to our orders."
Subsequently, and specifically on March 16, 1937, Mr. Guess executed a notarial act which recited that for the consideration of $4,800 cash, he conveyed "unto the Mansfield Hardwood Lumber Company of Louisiana, Inc., their assigns and successors, all the timber both pine and hardwood, *Page 805 
the pine 8" and up, 12" from the ground, and the hardwood 10" and up in diameter, 12" from the ground at the time of the cutting" on the lands described therein. This conveyance instrument and defendant's check for the named amount were attached to a written escrow agreement, signed by the grantor and the grantee, and all were deposited with the Jackson Parish Bank of Jonesboro, Louisiana. Provision was made in the escrow agreement for the examination of titles and the curing of defects attending them "in order to transfer and convey said timber on said lands to grantee, free and clear of all mortgages, liens and encumbrances."
The difference of $200, existing between the consideration of $5,000 expressed in the letter of March 10, and that of $4,800 shown in the executed deed, resulted by reason of the fact that 80 acres of the affected property had previously been sold to another company.
Examination of the titles to the several tracts included in the transaction, which was made at considerable expense to defendant, disclosed the existence of two mortgages affecting a portion of the lands. One was in favor of the Federal Land Bank and served as security for an unpaid loan of $7,000. The mortgagee in the other was the Jonesboro State Bank, to which there was due the sum of $2,500.
Efforts were made to obtain the cancellation or subordination of these encumbrances by paying the proceeds of the proposed sale to the named creditors. In this he was unsuccessful. The Federal Land Bank asked $3,500, while the other demanded full payment of the $2,500 indebtedness owed to it, making a total of $6,000; and the conveyance transaction would produce only $4,800. The debtor was financially unable to care for the $1,200 difference.
Obviously plaintiff was aware of the difficulty being experienced in clearing the titles. In a letter to defendant's vice-president, written June 5, 1937, and which concerned primarily the disposition of a logging ramp, plaintiff stated: "I haven't any confidence in the Guess deal going through is why I don't think I will need the ramp."
Mr. Guess then instructed Mr. W.T. Holloway, his attorney, to inform defendant of his inability to satisfy his mortgage creditors. Pursuant to the instructions, Mr. Holloway, on June 9, 1937, wrote to defendant as follows:
"Mr. Guess has been unable to get a subordination from the Jonesboro State Bank on the land that they hold a mortgage on and it does not seem that we will be able to close a deal on that. Accordingly let me know by return mail what you wish to do with your check.
"He desires to know, however, what you are willing to pay for the timber that is on the Federal Land Bank property and is willing to and able to obtain a clear title on that for you clear of all mortgages and judgments. I would, therefore, appreciate you letting me know what you intend to do with reference to the same."
Defendant replied two days later:
"This will acknowledge receipt of your letter of the 9th., regarding Guess timber deal. We note that Mr. Guess is unable to clear the title on this property. Please return our draft and other papers to us here.
"If Mr. Guess will give us a correct description of the property under mortgage to Federal Land Bank, and which he wishes to sell the timber on, we will look this over and make him a price."
Immediately after this exchange of letters, the escrowed papers were removed from the Jackson Parish Bank and the check returned to defendant, its maker.
No further negotiations respecting the timber were engaged in by defendant until November, 1938, or approximately a year and four months later. At that time, Mr. Guess notified Mr. Holloway, who was still his legal representative, that he had considerably reduced his indebtedness with the Jonesboro State Bank and could and wanted to sell his timber. Whereupon, the attorney telephoned Mr. Harrel, imparting this information; and after several conferences defendant acquired from Mr. Guess, for a cash consideration of $6,000 and under a duly executed act of conveyance, "all of the pine timber, 10" in diameter and up, 12" from the ground, at the time of cutting, and all of the hardwood timber, 12" in diameter and up, 12" from the ground, at the time of cutting," that stood on certain designated land. With the proceeds of this sale, Mr. Guess liquidated entirely the balance of his indebtedness with the Jonesboro State Bank and paid $3,500 on the Federal Land Bank loan.
In the meantime, that is following failure of consummation of the initial transaction, *Page 806 
plaintiff ceased his activities respecting the timber's sale. No further efforts were made by him to bring the parties together, and he took no part whatever in the November, 1938, negotiations. However, after the sale had been effected, he made written demand on defendant to pay him the sum of $1,160.50. Therein he asserted that under his agreement, evidenced by the above-quoted letter of March 10, 1937, he was entitled to a commission of $500, and additionally $660.50, an amount that he would have earned in logging the purchased timber.
These are the identical claims that form the basis of this action, and it is for the mentioned total amount that plaintiff asks judgment herein.
The trial court held that the demand for a commission was not well founded, appropriately stating: "The agreement of March 10, did not provide for plaintiff to be paid $500.00 in case defendant ever purchased any part of the property under consideration." This holding, in our opinion, is correct. As we appreciate the evidence, both Mr. Guess and defendant did everything possible to bring about a closing of the deal which plaintiff arranged. Both were eager for the contemplated timber sale to be effected, and there is nothing to indicate that either sought to avoid payment to plaintiff. If it had terminated successfully plaintiff would have received the contended for commission. The above-described financial obstacles, however, prevented this.
Furthermore, the consummated transaction, which occurred almost one and one-half years later and without the intervention of plaintiff, was different in several particulars from the initial arrangement. The acreage differed to some extent and the consideration of the last agreement included an additional $1,000. Also, as appears from the above descriptions of the two deeds, there was a variance in the size of the timber.
The claim made for loss of earnings from the proposed logging operations is likewise without merit. The agreement respecting this proposal, as defendant's letter indicates, was conditioned on delivery of the timber contracted for; and it became ineffective when delivery thereof was rendered impossible.
Accordingly, the judgment is affirmed.